**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
WICHITA FALLS DIVISION**

| | | |
|---|---|---|
| **PABLO GONZALES, JR.,** | § | |
| | § | |
| **Petitioner,** | § | |
| | § | |
| **v.** | § | **Civil Action No. 7:18-cv-00010-O-BP** |
| | § | |
| **DIRECTOR TDCJ - CID,** | § | |
| | § | |
| **Respondent.** | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Before the Court is Pablo Gonzales, Jr.'s ("Petitioner") 28 U.S.C. § 2254 habeas corpus petition (ECF No. 1) filed on January 22, 2018; Memorandum in Support (ECF No. 9) filed on February 27, 2018; Respondent's Response (ECF No. 16) filed on June 8, 2018; Administrative Records (ECF Nos. 18-20) filed on June 8, 2018; and Petitioner's Traverse Brief (ECF No. 24) filed on September 24, 2018. After considering the pleadings and applicable law, the undersigned **RECOMMENDS** that United States District Judge Reed O'Connor **DENY** Petitioner's petition (ECF No. 1).

**I.    FACTUAL BACKGROUND**

On January 29, 2015, Petitioner was convicted of one count of aggravated sexual assault and three counts of indecent contact with a child in the 90th Judicial District Court of Young County, Texas. (ECF No. 1 at 2; ECF No. 9 at 1). Following his conviction, Petitioner filed a direct appeal in the Second Court of Appeals in Fort Worth, Texas, which affirmed his conviction on September 24, 2015.  (ECF No. 1 at 3). He filed several petitions for discretionary review ("PDR") in the Texas Court of Criminal Appeals ("TCCA") (*see* cause nos. PD1398-15; PD1399-15; PD1400-15; PD1401-15). (*Id.*). These petitions were denied on December 16, 2015. (*Id.*).

Additionally, Petitioner filed several state habeas corpus petitions (*see* cause nos. WR-85, 344-01; WR-85, 344-02; WR-85, 344-03; WR-85, 344-04) in the 90th Judicial District Court of Young County, Texas. (*Id.*). These petitions were denied in November 2015. (*Id.* at 4). He also filed a PDR in the TCCA. (*Id.*). The TCCA denied his petition without written order on May 24, 2017. (*Id.*).

Petitioner has now filed this § 2254 habeas corpus petition. (*See* ECF No. 1). He argues that: (1) he is actually innocent; (2) there is no evidence to support his convictions; (3) the prosecution allegedly made racially motivated and discriminatory peremptory strikes during the jury selection process; and (4) he received ineffective assistance of counsel. (ECF No. 9 at 2). Petitioner requests that his conviction be reversed and remanded to the trial court with instructions to enter a judgment of acquittal. (*Id.* at 37). In response, Respondent argues that the Court should deny Petitioner's petition because his claims are either procedurally barred or meritless. (*See* ECF No. 16).

Petitioner replies that he is actually innocent because: (1) victim Jane Doe D was murdered by her sexual abuser, and her murderer likely was responsible for the crimes Petitioner was accused of committing against her; and (2) many of the victims were sexually abused by "other men," who likely were responsible for the crimes Petitioner was accused of committing against them. (ECF No. 24 at 5-6). Petitioner avers that the prosecution did not meet its burden of proof to uphold his convictions, and that it withheld exculpatory evidence at trial. (*Id.* at 7-8). Petitioner also makes new allegations against his trial attorneys to support his ineffective assistance of counsel claim. (*See id.* at 9-12, 14). Finally, Petitioner requests that the Court grant his § 2254 habeas corpus petition, and in the alternative, grant an evidentiary hearing. (*Id.* at 14).

## II.   LEGAL STANDARD

### A.  AEDPA Standard for § 2254 Habeas Cases

Under the Antiterrorism and Effective Death Penalty Act of 1996, "a federal court may grant a state prisoner's application for a writ of habeas corpus if the state-court adjudication pursuant to which the prisoner is held 'resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.'" *Howes v. Fields*, 565 U.S. 499, 505 (2012) (quoting 28 U.S.C. § 2254(d)(1)).

"[A] state court decision is contrary to . . . clearly established [federal law] if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases or if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [its] precedent." *Lockyer v. Andrade*, 538 U.S. 63, 73 (2003) (internal quotation marks omitted). "It is an unreasonable application of Supreme Court precedent 'if the state court identifies the correct governing legal rule from [the] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case.'" *Salts v. Epps*, 676 F.3d 468, 473–74 (5th Cir. 2012) (alteration in original) (quoting *Williams v. Taylor*, 529 U.S. 362, 407 (2000)).

To obtain habeas relief under § 2254, "a state prisoner must show that the state court's ruling on the claim . . . was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for [fair-minded] disagreement." *White v. Woodall*, 572 U.S. 415, 419–20 (2014) (quotation omitted). "If this standard is difficult to meet, that is because it was meant to be." *Harrington v. Richter*, 562 U.S. 86, 102 (2011).

### III.    ANALYSIS

#### A.  Actual Innocence

"Actual innocence means 'factual innocence' and not mere legal insufficiency." *Murray v. Davis*, No. 3:16-CV-3305-L (BT), 2018 WL 3829806, at *13 (N.D. Tex. June 14, 2018) (citing *Bousley v. United States*, 523 U.S. 614, 623 (1998)); *see also United States v. Jones*, 172 F.3d 381, 384 (5th Cir. 1999). "A claim of actual innocence must be based on reliable evidence *not* presented at trial." *Murray*, 2018 WL 3829806 at *13 (citing *Schlup v. Delo*, 513 U.S. 298, 324 (1995)). "[W]here a petitioner asserts his actual innocence of the crime, he must show, as a factual matter, that it is more likely than not that no reasonable juror would have convicted him in light of the new evidence presented in his habeas petition." *Id.* at 327. New evidence means "relevant evidence that was either excluded or unavailable at trial." *Schlup*, 513 U.S. at 328.

Petitioner argues that had exculpatory evidence of medical examination reports pertaining to two of the sexual abuse victims been given to him at his trial, he would have been declared innocent of the crimes. (ECF No. 9 at 7, 10). Petitioner, however, presents no new evidence in support of his actual innocence claim. Moreover, the evidence in the record supports the proposition that the medical examination reports were available and admitted into evidence at his trial. (*See* ECF No. 19 at 49-58, 64). Because Petitioner did not present newly discovered evidence that likely would have altered the guilty verdict rendered by the jury in his trial, his actual innocence claim must be denied. Petitioner attempts to bolster his actual innocence claim by arguing that he received ineffective assistance of counsel. (ECF No. 9 at 6-10). Petitioner asserts that had his attorneys requested and presented the medical examination reports of two of the victims at his trial, he "could have been 'Acquitted' [sic] of the 'false charges.'" (*Id.* at 7, 9). The undersigned addresses this ineffective assistance of counsel argument later in the analysis. Nevertheless, Petitioner's actual innocence claim fails.

4

### B. No Evidence

Petitioner argues that there is no evidence to support each element of the charged crimes, and that there is no evidence to support the jury's guilty verdict. (*Id.* at 11). He asserts that there is no evidence that corroborates Jane Doe A's testimony. (*Id.*). Particularly, Petitioner argues that the prosecution failed to prove beyond a reasonable doubt that he had the intent or knowledge to commit the crimes of which he was convicted. (*Id.* at 12). Petitioner further argues that the prosecution did not prove beyond a reasonable doubt that he penetrated the alleged victims' sexual organs or anus. (*Id.*).

Before addressing the merits of this claim, the undersigned notes that Petitioner is procedurally barred from asserting it because he did not raise this claim in his PDR to the TCCA. (*See* ECF No. 16 at 9; ECF No. 18 at 1507-42; ECF No. 19 at 2-3). Under 28 U.S.C. § 2254(b), "[a] petitioner must fully exhaust state remedies before seeking federal habeas relief." To exhaust in accordance with § 2254, a petitioner must fairly present the factual and legal basis of any claim to the highest available state court for review prior to raising it in federal court. *Deters v. Collins*, 985 F.2d 789, 795 (5th Cir. 1993); *Richardson v. Procunier*, 762 F.2d 429, 432 (5th Cir. 1985); *Carter v. Estelle*, 677 F.2d 427, 443 (5th Cir. 1982). In Texas, a prisoner must present his claim to the TCCA in a PDR or an application for writ of habeas corpus. *Bautista v. McCotter*, 793 F.2d 109, 110 (5th Cir. 1986); *Richardson*, 762 F.2d at 432. As a matter of comity, the state courts must have a fair opportunity to hear and consider the claims raised by an applicant before those claims are heard in federal court. *Picard v. Connor*, 404 U.S. 270, 275 (1971). Because Petitioner did not give the TCCA a fair opportunity to hear and consider this claim, he is procedurally barred from asserting it.

Even if Petitioner's no evidence claim were not procedurally barred, it is unpersuasive. When considering a no evidence claim, a federal court must consider whether in viewing the

evidence "in the light most favorable to the prosecution, any rational trier of fact could have found the existence of facts necessary to establish the essential elements of the offense beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979). "This standard is applied with "explicit reference to the substantive elements of the criminal offense as defined by state law." *Dupuy v. Cain*, 201 F.3d 582, 589 (5th Cir. 2000) (internal quotations omitted). The elements of aggravated sexual assault are:

> the person . . . (B) regardless of whether the person knows the age of the child at the time of the offense, intentionally or knowingly: (i) causes the penetration of the anus or sexual organ of a child by any means . . . (iii) causes the sexual organ of a child to contact or penetrate the mouth, anus, or sexual organ of another person, including the actor . . . and (2) if . . . (B) the victim is younger than 14 years of age, regardless of whether the person knows the age of the victim at the time of the offense . . . .

Tex. Penal Code § 22.021(a) (West 2011). The elements of indecency with a child by contact are:

> (a) A person commits an offense if, with a child younger than 17 years of age, whether the child is of the same or opposite sex and regardless of whether the person knows the age of the child at the time of the offense, if the person: (1) engages in sexual contact with the child or causes the child to engage in sexual contact; or (2) with intent to arouse or gratify the sexual desire of any person: (A) exposes the person's anus or any part of the person's genitals, knowing the child is present; or (B) causes the child to expose the child's anus or any part of the child's genitals.

Tex. Penal Code § 21.11(a) (West 2011).

In applying the Texas criminal statutes to the evidence presented at Petitioner's trial, there is ample evidence to support the jury's guilty verdict for both crimes. For instance, although Petitioner alleges that his trial attorneys did not request a medical examination report for Jane Does A and C and that this "exculpatory evidence" was not presented at his trial, a medical examination report as to both Jane Does A and C is in the record. (*See* ECF No. 19 at 49-58). Bolstering the fact that medical examination reports were available during the trial is the affidavit of Ms. Moore, one of Petitioner's attorneys, who testified that "[m]edical records were used [at his trial] to the extent available." (*Id.* at 64).

Petitioner also recounts the testimony of Jane Does A, B, C, and E; T.H.; and Amanda Moore concerning his sexual abuse of the victims. (*See* ECF No. 9 at 5, 21, 25). According to Petitioner, Jane Doe A testified that he "touched her a number of times in the vaginal area, both under and over her clothes." (*Id.* at 5). Jane Doe A also testified that "she woke up to [Petitioner] abusing her while she slept . . . [and that] the alleged offense occurred when she was 10 years old." (*Id.*).

Petitioner states that Jane Doe B testified that "when she was in pre-kindergarten in 2004 . . . he touched her vagina under her clothes." (*Id.*). Jane Doe C testified that "when she was 10 years old, she was laying in [Petitioner's] bed when he rubbed on her vaginal area and then penetrated her vagina with his two fingers." (*Id.*). Jane Doe E allegedly testified that "she was 8 years old when [Petitioner] began . . . rubbing her vagina through her underwear." (*Id.*). Moreover, Amanda Moore, Petitioner's niece, testified that "when Jane Doe D learned that she was going to . . . [his] house . . . [she] reacted hysterically and refused to go." (*Id.* at 21). Finally, T.H. testified "that at the time of the abuse she perceived that her father was trading her to [Petitioner] for drugs . . . [and about] how [Petitioner] had sexually abused her." (*Id.* at 25).

Considering this evidence, a jury could have found Petitioner guilty beyond a reasonable doubt of the crimes for which he was convicted. Even if Petitioner's no evidence claim were not procedurally barred, it is unpersuasive.

### C.  Petitioner's *Batson* Challenge is Unavailing

Petitioner argues that the prosecution violated his equal protection rights articulated in *Batson v. Kentucky*, 476 U.S. 79 (1986) by making racially motivated and discriminatory peremptory strikes during the jury selection process. (ECF No. 9 at 14). Petitioner argues that he notified his trial attorneys that "there were no blacks and Hispanics in the jury array from which the final trial jury was to be selected . . . ." (*Id.* at 15). Petitioner further argues that "there were no

blacks or Hispanics on the [final] jury . . . which violated [his] rights . . . to a jury drawn from a fair cross-section of the community . . . ." (*Id.*).

The Court in *Batson* made clear that a "[s]tate's purposeful or deliberate denial to [minority prospective jurors] on account of race of participation as jurors in the administration of justice violates the Equal Protection Clause." *Batson*, 476 U.S. at 84 (internal quotations omitted). However, "a defendant has no right to a petit jury composed in whole or in part of persons of his own race." *Id.* at 85 (internal quotations omitted). "But the defendant does have the right to be tried by a jury whose members are selected pursuant to non-discriminatory criteria." *Id.*

To raise a prima facie *Batson* challenge, a defendant "must show that he is a member of a cognizable racial group." *Id.* at 96. "Second, the defendant is entitled to rely on the fact, as to which there can be no dispute, that peremptory challenges constitute a jury selection practice that permits 'those to discriminate who are of a mind to discriminate.'" *Id.* (citing *Avery v. Georgia*, 345 U.S. 559, 562 (1953)). Finally, "the defendant must show that these facts and any other relevant circumstances raise an inference that the prosecutor used that practice to exclude the veniremen from the petit jury on account of their race." *Batson*, 476 U.S. at 96. "Once the defendant makes a prima facie showing, the burden shifts to the [s]tate to come forward with a neutral explanation for challenging . . . jurors [in a particular racial group]." *Id.* at 97. "The trial court then will have the duty to determine if the defendant has established purposeful discrimination." *Id.* at 98.

Although *Batson* explained that a jury must be drawn from a cross-section of the community, this does not mean that if African-American and Hispanic jurors ultimately are not selected for the final jury panel, the prosecution engaged in racially motivated and discriminatory practices when it peremptorily struck those jurors. It was Petitioner's obligation to raise a *Batson*

challenge at his trial so that it could be contemporaneously resolved because the trial court was in the best position to know whether the prosecution violated *Batson* and could have rendered a decision accordingly. *Picard*, 404 U.S. at 275; *see also Sawyer v. Johnson*, No. 95-40921, 1997 WL 256021, at *1 (5th Cir. Apr. 17, 1997). Petitioner failed to assert a *Batson* objection at his trial. (ECF No. 9 at 15). For this reason alone, his *Batson* claim is not properly before the Court and should be denied. *United States v. Griffith*, 522 F.3d 607, 610 (5th Cir. 2008) (citing *United States v. Thibodeaux*, 211 F.3d 910, 912 (5th Cir. 2000)). Even if Petitioner's *Batson* claim were properly before the Court, the record does not reflect that the prosecution committed a *Batson* violation. As described below in connection with Petitioner's ineffective assistance of counsel claim, there is no evidence of a *Batson* violation.

### D.  Ineffective Assistance of Counsel

Petitioner argues that his trial attorneys failed to: (1) interview and investigate eyewitnesses; (2) object to the prosecution's use of discriminatory challenges against prospective Hispanic jurors and preserve his *Batson* claim on appeal; (3) object to inadmissible testimony from the prosecution's witnesses; and (4) allow Petitioner an opportunity to testify during the "guilt/innocence phase" of his trial. (ECF No. 9 at 21).

The Sixth Amendment of the United States Constitution guarantees a criminal defendant "reasonably effective assistance" of counsel. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Federal courts apply the *Strickland* test when determining whether a criminal defendant received effective assistance of counsel. *Id.* at 687-88. Under the *Strickland* test, a criminal defendant must show that counsel's performance was deficient, and that this deficiency prejudiced his defense. *Id.* at 687. Counsel's performance is deficient if it falls below an objective standard of reasonableness. *Id.* at 688. A court's review of counsel's performance must be "highly deferential" and must make

every effort to "eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* at 689. To prove prejudice, a criminal defendant must show that there is a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different. *Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* Moreover, a reasonable probability "requires a 'substantial,' not just 'conceivable,' likelihood of a different result." *Cullen v. Pinholster*, 563 U.S. 170, 189 (2011) (quoting *Harrington*, 562 U.S. at 86).

"A trial court's credibility determinations made on the basis of conflicting evidence are entitled to a strong presumption of correctness and are 'virtually unreviewable' by the federal courts." *Pippin v. Dretke*, 434 F.3d 782, 792 (5th Cir. 2005) (quoting *Moore v. Johnson*, 194 F.3d 586, 605 (5th Cir. 1999)). Furthermore, the resolution of factual issues by the state court is afforded a presumption of correctness and will not be disturbed unless the habeas petitioner rebuts the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

### 1. Failure to Interview and Investigate Eyewitnesses

Petitioner alleges that his trial attorneys rendered ineffective assistance because they failed to interview and investigate Amanda Moore and Jane Doe D. (ECF No. 9 at 21). To support this claim, he cites *Nealy v. Cabana*, in which the court "recognized that, at a minimum, counsel has the duty to interview potential witnesses and to make an independent investigation of the facts and circumstances of the case." 764 F.2d 1173, 1177 (5th Cir. 1985). In *Nealy*, the Fifth Circuit made clear that:

> [d]efense counsel is not required . . . to investigate everyone whose name happens to be mentioned by the defendant. In all of the cases in which this axiom has been applied, however, the court found either that counsel's decision not to investigate was part of a clearly developed defensive strategy, or that the defendant could point

to no specific evidence that would have been uncovered by a more thorough investigation.

*Id.* at 1178 (internal quotations omitted). But, where a petitioner

has identified specific missing testimony, and has argued that there was no reason for [his trial attorneys] not to have at least attempted to locate [witnesses and where his attorneys have] not testif[ied] that such efforts would have been fruitless [or] was part of a calculated trial strategy . . . [this] failure to investigate . . . result[s] in a factual vacuum and cannot withstand sixth amendment scrutiny.

*Id.*

The facts in *Nealy*, however, are distinguishable from this case. Nealy's attorney made no attempts to contact two brothers or a female witness who could have verified Nealy's alibi during the time of a grocery store robbery and felony murder. *Id.* Additionally, Nealy's attorney "did not testify that [by attempting to locate these witnesses,] such efforts would have been fruitless, nor did he claim that the decision not to investigate was part of a calculated trial strategy." *Id.* Thus, Nealy's attorney's deficient performance prejudiced Nealy in a way that "undermine[d] the fundamental fairness of the proceeding and . . . suggest[ed] that a new trial [was] necessary to ensure that Nealy receive[d] a fair trial." *Id.* at 1180.

Here, Petitioner alleges that his attorneys "failed to interview Amanda Moore and Jane Doe D to discover exactly why [Jane Doe D] refused to go to [his] home again." (ECF No. 9 at 21). Notably, by the time Petitioner's trial commenced, Jane Doe D was deceased, so his attorneys could not have interviewed or investigated her. (ECF No. 16 at 5). Furthermore, Petitioner's attorney, Mr. Val Verde, cross-examined Amanda Moore about her lack of personal knowledge concerning Jane Doe D's sexual abuse. (ECF No. 9 at 21; ECF No. 18-11 at 51-54). Mr. Val Verde could not cross-examine Amanda Moore on the topic of why Jane Doe D refused to return to Petitioner's home because during direct-examination of this witness, he objected to hearsay

concerning this very topic, and the trial court sustained the objection. Considering this evidence and testimony, Petitioner's allegations of ineffectiveness are unpersuasive.

Moreover, Petitioner alleges that his attorneys failed to interview Officer Vanlandingham, Captain Ken Cobb, Lieutenant Jim Reeves, T.H., T.P., Jane Doe C, Diana Moore, Debra Ford, Shelly Tinney, and Shannon May "to gather the surrounding facts of the case . . . ." (*Id.* at 23, 25, 26). Petitioner also alleges that his trial attorneys failed to identify "what information Jane Doe C provided [to Shannon May] that was beyond her level of maturity." (*Id.* at 22).

Next, Petitioner alleges that his attorneys failed to interview Jane Does A, B, and E to obtain their medical examination reports for presentation at trial. (*Id.* at 23). Petitioner also alleges that his attorneys did not interview Andra Ray to "discover why Jane Doe C had an issue with lying, and why Jane Doe A did not discuss the alleged abuse during the counseling sessions." (*Id.* at 26).

Petitioner's allegations, however, are rebutted by Mr. Val Verde. (ECF No. 16 at 18). Mr. Val Verde testified that "[a]ll witnesses that defendant provided . . . were interviewed or attempts to interview them were made. [The] [a]ttorney reviewed all the evidence provided by the State including the police reports, victims' statements, CPS reports, and medical reports." (*Id.*) (internal quotations omitted). Unlike in *Nealy*, where it was undisputed that the defendant's attorney did not interview key witnesses or investigate their statements, Petitioner's attorney, Mr. Val Verde, did so. Moreover, the state habeas court agreed with and believed Mr. Val Verde's affidavit.

Under 28 U.S.C. § 2254(e)(1), Petitioner's trial attorneys were not deficient in failing to interview and investigate potential witnesses because they did so, as determined by the state habeas

court, adopted as fact, and presumed correct. The Court need not address *Strickland's* second prong because Petitioner was not prejudiced given that his attorney's actions were not deficient.

### 2. Failure to Preserve Batson Challenge for Appeal

Petitioner alleges that his trial attorneys rendered ineffective assistance because they failed to preserve his *Batson* challenge for appeal. (ECF No. 9 at 29-30). Under *Strickland*, Petitioner must first show that his trial attorneys' performance was deficient when they failed to make a *Batson* challenge to the prosecution's alleged discriminatory peremptory strikes. *Strickland*, 466 U.S. at 687. Their performance is deficient if it falls below an objective standard of reasonableness. *Id.* at 688. Failure to make a frivolous objection does not cause the trial attorneys' "performance to fall below an objective level of reasonableness." *Sones v. Hargett*, 61 F.3d 410, 415 n. 5 (5th Cir. 1995).

Here, had Petitioner's trial attorneys made a *Batson* challenge, their objection would have been frivolous. Petitioner's trial attorneys offered legitimate reasons for why it was not in his best interest to have certain Hispanic jurors on his final jury panel. (*See* ECF No. 20-1 at 4, 13, 38). For instance, Ms. Moore stated that "individuals . . . who had Hispanic surnames were undesirable . . . [for the] defense, in that we were trying to avoid parents or grandparents with young female grandchildren or children about the same age as these alleged victims at the time of the alleged events." (*Id.* at 4). Ms. Moore referenced Joel Hernandez, who was also ineligible to serve on the final jury panel, because he articulated that he was unable to judge others. (*Id.*).

Additionally, Mr. Val Verde explained that "there is no evidence that the State used discriminatory . . . peremptories [sic] during voir dire to exclude all Hispanics. The evidence shows that the State only struck two individuals with Hispanic Surnames." (*Id.* at 13). Dee Hudson Peavy, then-District Attorney for the 90th Judicial District for Young and Stephens Counties, explained that she struck a prospective Hispanic juror named Rodolfo Bueno because of his close friendship

with Joel Hernandez. (*Id.* at 38). Ms. Peavy was concerned about Mr. Hernandez's influence on Mr. Bueno because they were close friends and, as a result, Mr. Bueno might not have been able to judge Petitioner fairly. (*Id.*). Finally, Ms. Peavy explained that she struck one other prospective juror with a Hispanic surname because she had personal knowledge that "he was previously No-Billed for an Aggravated Assault charge." (*Id.* at 39). Ms. Peavy was concerned that this prospective juror "would be adverse to the State in its prosecution regardless of his not voicing such a prejudice." (*Id.*).

Given these explanations, Petitioner's trial attorneys performed effectively by not raising a *Batson* challenge and did not perform deficiently by failing to preserve a *Batson* challenge on appeal. Because Petitioner has not proven that his trial attorneys' performance was deficient, his defense was not prejudiced by their actions. Therefore, Petitioner's claim fails to satisfy the *Strickland* test.

### 3. Inadmissible Testimony

Petitioner alleges generally that the testimony presented against him at his trial was inadmissible because it "was totally weak and very circumstantial, and 'hardly overwhelming.'" (ECF No. 9 at 34). Petitioner claims that "he suffered actual prejudice from both attorneys [sic] failure to object to the highly prejudicial comments by the testifying alleged victims." (*Id.*). Petitioner cites *Lyons v. McCotter* for the proposition that "[t]rial counsel's failure to object to highly inflammatory inadmissible evidence has no strategic value and failure to request a limiting instruction constitutes ineffective assistance of counsel." 770 F.2d 529 (5th Cir. 1985). Petitioner argues that because his trial attorneys did not move for a mistrial once the court admitted the victims' testimony, their inaction constitutes ineffective assistance of counsel.

In *Lyons*, the habeas petitioner was convicted of aggravated robbery of a convenience store. *Id.* at 532. He asserted that "the evidence presented by the state was insufficient to sustain the jury's verdict of guilty because it was based upon identification by [the victim of the aggravated robbery] which resulted from impermissibly suggestive pre-trial identification procedures and that he was denied effective assistance of counsel by his trial attorney." *Id.* The district court found that the prosecution presented sufficient evidence beyond a reasonable doubt to sustain the jury's verdict of guilty, but that the petitioner received ineffective assistance of counsel. *Id.* To support the last finding, the district court reasoned that the petitioner's attorney should have objected to the prosecution's introduction of his prior criminal conviction for robbery because it was highly prejudicial and not sound trial strategy. *Id.* at 533. The Fifth Circuit affirmed, explaining that because the petitioner's attorney failed to object, he allowed the jury to believe the very worst—that the petitioner had a propensity to commit robberies and thus was likely to have committed the one at issue. *Id.* at 534-35.

The facts in Petitioner's case are distinguishable from *Lyons*. First, Petitioner argues that the testimony of the victims and outcry witness was inadmissible because it "was totally weak and very circumstantial, and 'hardly overwhelming.'" (ECF No. 9 at 34). Petitioner asserts that his trial attorneys should have objected to this testimony. (*Id.*). This testimony differs from that in *Lyons* because the testimony of the victims and outcry witness concerned the instant offense, not a prior offense. Consequently, the jury could not have inferred from the testimony that Petitioner had a propensity to sexually assault and engage in indecent sexual contact with children based upon a long-passed criminal conviction. Therefore, Petitioner's trial attorneys were not ineffective in failing to object to the complained of testimony.

15

Petitioner also alleges that Debra Ford's testimony concerning a handwritten letter written by him and admitted into evidence *over his objection* was also "totally weak and very circumstantial, and 'hardly overwhelming.'" (ECF No. 9 at 34) (emphasis added). Petitioner allegedly composed the letter in Debra Ford's living room and directed it towards his ex-wife, Diana Moore, exclaiming that he was "not going to jail." (*Id.*). Because Petitioner's only argument for why this testimony was inadmissible is that it was "circumstantial" and "hardly overwhelming," it fails for lack of a proper basis for excluding this evidence. And Petitioner's trial attorneys objected to this evidence at trial even though it was still admitted, so they could not have rendered ineffective assistance because they objected to no avail. Just because the trial court overruled the objection does not mean that Petitioner's trial attorneys were ineffective.

Petitioner fails to satisfy the *Strickland* test for this claim because he did not prove that his trial attorneys' performance was deficient and that he was prejudiced by any deficiency. Therefore, his trial attorneys did not render ineffective assistance.

### 4. *Failure to Allow Petitioner an Opportunity to Testify at Trial*

Lastly, Petitioner "contends that he informed both trial attorneys, prior to trial, during trial, and even after trial that he wanted to testify during the entire trial because all the alleged victims were lying on him." (ECF No. 9 at 35). Petitioner alleges that his trial attorneys did not allow him an opportunity to testify. (*Id.*). He claims that had he been given the opportunity to testify, he could have contradicted the alleged victims' testimony, and the jury would have had to decide whose testimony they believed. (*Id.*).

Petitioner further alleges that if the jury believed his version of events, he likely would have been found not guilty. (*Id.*). As a result, Petitioner alleges that he suffered harm because his trial attorneys did not allow him to testify. (*Id.*). He claims that this error constitutes ineffective assistance of counsel. (*Id.*).

16

Petitioner correctly cites *Rock v. Arkansas* for the proposition that a criminal defendant's right to testify at his trial is one that is personal and fundamental. 483 U.S. 44, 52-53 (1987). The Supreme Court in *Rock* explained that a defendant's opportunity to conduct his own defense by calling witnesses is taken from him if his trial attorneys refuse to allow him to testify. *Id.*

The evidence in the record proves that Petitioner's attorneys did not prevent him from testifying. (ECF No. 19-21 at 25-26). Ms. Moore asked Petitioner several times at trial whether he wanted to testify, and he declined each time as shown below:

> Q.     Is it fair to say that you also have had satisfaction with the way that we have explained the case and performed as your attorneys through this process?
>
> A.     Yes ma'am.
>
> Q.     And do you want to make the decision today not to testify, also, and to waive your right to talk to these jurors in a courtroom, with them being able to listen to you tell your story without it being interfered with, with anybody else telling your story, like it's gone through the last few days of trial?
>
> A.     Yes, ma'am.
>
> Q.     And you want to not testify. You are going to give up that right today, aren't you?
>
> A.     Yes, ma'am.
>
> Q.     And you're sure that's okay with you?
>
> A.     Yes, ma'am.
>
> Q.     And you know it may have consequences in the way a jury looks at something, even by hearing what they said at voir dire, but you think that is best for you?
>
> A.     Yes, ma'am.
>
> Q.     All right. And you've made that decision intelligently and knowingly?
>
> A.     Yes, ma'am.

(*Id.*).

17

Thus, Petitioner made a knowing and voluntary decision not to testify at his trial. His trial attorneys did not deprive him of the opportunity to testify. Therefore, because Petitioner has not satisfied the *Strickland* test, his ineffective assistance of counsel claim fails on this basis.

## IV.    CONCLUSION

Petitioner's § 2254 habeas corpus petition should be denied because: (1) his actual innocence claim fails; (2) there was ample evidence admitted against him at trial from which the jury could have found him guilty beyond a reasonable doubt for the charged crimes, and his no evidence claim is unpersuasive even if it were not procedurally barred; (3) even if his *Batson* claim were properly before the Court, the record does not reflect that the prosecution committed a *Batson* violation, nor does it reflect that his trial attorneys provided ineffective assistance when they did not assert a *Batson* objection; and (4) his ineffective assistance of counsel claims fails.

Petitioner's § 2254 habeas corpus petition should be denied because his state-court adjudication did not result "'in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.'" *Howes*, 565 U.S. at 505 (quoting 28 U.S.C. § 2254(d)(1)).

### RECOMMENDATION

After considering the pleadings and applicable law, the undersigned **RECOMMENDS** that United States District Judge Reed O'Connor **DENY** Petitioner's § 2254 habeas corpus petition (ECF No. 1).

A copy of this Findings, Conclusions, and Recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this Findings, Conclusions, and Recommendation must file specific written objections within fourteen days after being served with a copy. *See* 28 U.S.C. § 636(b)(1)(B); Fed. R. Civ. P. 72(b)(1). To be specific, an objection must identify the specific finding or recommendation to which the objection is made, state the

basis for the objection, and specify the place in the magistrate judge's Findings, Conclusions, and Recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc).

Signed **March 12**, **2019**.

Hal R. Ray, Jr.
UNITED STATES MAGISTRATE JUDGE